### *EX PARTE* KURZ.

1. It is not necessary that exceptions to the right of homestead, in order to be considered, should be filed within the time designated in the master's published notice, or, indeed, before the return of the appraisers.

2. A person in possession of land under a contract to purchase, is entitled, after the payment in full of the purchase money, to claim his homestead therein, even though he may not have acquired a formal legal title.

3. Where a creditor has a judgment against his debtor under a contract to purchase, for the sale of so much of the land as may be sufficient to pay the debt "with due regard to the interests of the parties concerned," and the land is a single tract, all of which, outside of enough to make a homestead, is sold, under another proceeding, for a sum sufficient to pay said debt, other judgment creditors with no lien on this land cannot require the vendor first to exhaust this homestead so that the proceeds of sale of the part not assigned may be applied to their judgments.

4. This case distinguished from *Savings Bank* v. *Harbin*, 18 *S. C.*, 425.

Before Cothran, J., Abbeville, June, 1885.

The opinion sufficiently states the case.

*Messrs. Parker & McGowan*, for appellants.

*Mr. Samuel C. Cason*, contra.

March 25, 1886.      The opinion of the court was delivered by

Mr. Justice McIver. In December, 1874, one Jacob Kurz, under a contract to purchase from one Joel S. Perrin, went into possession of a lot of land, containing twenty acres, more or less, known as the Westfield lot. The purchase money not having been paid, the administrator of Perrin, who in the meantime had

died, on July 29, 1878, commenced an action against Kurz to enforce compliance with the terms of said contract or for a sale of the premises, and on September 13, 1878, obtained judgment for the amount due on the purchase money, and "that the premises described in the complaint, as hereinafter set forth, or so much thereof as may be sufficient to raise the amount reported to be due to the plaintiff for principal, interest, and costs, be sold with due regard to the interests of the parties concerned." No steps appear to have been taken to enforce this judgment, for the reason probably that payments were made from time to time thereon, leaving a balance due thereon of eight hundred dollars, on March 14, 1882, when the said judgment was assigned to Wm. H. Parker and W. C. McGowan.

On January 31, 1885, Jacob Kurz died intestate, leaving a widow, the appellant herein, and an infant son living with her in the dwelling house on said lot of land. On March 2, 1885, the widow filed her petition before the master praying that a homestead be assigned to her out of said lot, as well as the exemption provided by law out of the personal property of which intestate died possessed. On the same day the master published the usual notice to creditors and others interested of this application for homestead, and on March 18, 1885, W. H. Parker and W. C. McGowan filed with the master a notice of the judgment which had been assigned to them as above stated, in which they "insist that homestead in the said real estate be not set off to C. E. Kurz, petitioner, absolutely, but subject to the rights under the decree in the above stated cause of the undersigned creditors in the event that there be not sufficient proceeds from said property, outside of the homestead, to pay the balance of said decree and costs." On April 4, 1885, the master granted an order appointing appraisers to lay off the homestead subject to the rights of said Parker and McGowan, in which, amongst other things, he recites that no objection to the same was filed in his office except the notice of Parker and McGowan above referred to.

On April 4, 1885, the appraisers made their return, allotting to the petitioner out of said Westfield lot as her homestead "the dwelling house in which she resides and in which Jacob Kurz resided at his death," together with the land on which it stood

and adjoined, supposed to contain not exceeding one and one-half acres, describing the same by metes and bounds; and also set off to her personal property to the amount of five hundred dollars. On April 16, 1885, exceptions to the assignment of the homestead proper were filed by two judgment creditors of the intestate, Jacob Kurz, one of the judgments having been entered on September 6, 1878, and the other on June 6, 1879, substantially upon the grounds: 1st. That the petitioner is not entitled to homestead in the premises. 2d. That if she is, the same is first liable to the judgment of Parker and McGowan before any portion of the land outside of that assigned to her as homestead can be applied to said judgment.

On April 14, 1885, the administrator of Jacob Kurz filed a creditors' bill, to which the widow and her infant son as well as the judgment and other creditors of Jacob Kurz are parties, in which, amongst other things, the administrator asked that all of the real estate of said Kurz except that assigned to the widow as homestead be sold to pay debts in aid of the personalty, and an order of sale was granted as prayed for; and it is admitted that since the hearing of the exceptions to the assignment of homestead all of the real estate except that portion assigned to the widow as her homestead has been sold by the master, under said order, for an amount more than sufficient to pay the balance due on the judgment held by Parker and McGowan.

The case was heard by Judge Cothran, who rendered a decree holding that the general creditors had an equity to force the holders of the judgment for the unpaid purchase money first to exhaust the homestead before they could go upon the land outside of it, and that the objection urged by the petitioner, that the creditors should have filed their exceptions before the master to the issuing of the order appointing appraisers to lay off the homestead, and this not having been done the Circuit Court had no jurisdiction except to order a new appraisement, could not be sustained. He therefore rendered judgment confirming the return of the appraisers so far as the exemption of personal property was concerned, no objection having been made thereto, but set aside so much as assigned the homestead in the real estate, and dismissed the petition with costs.

From this judgment the petitioner appealed upon the several grounds set out in the "Case," which, however, need not be set out here as they make substantially but four questions: 1st. As to the jurisdiction of the Circuit Court to determine the right to homestead in the absence of any exceptions before the master within the period designated for publication of the notice of the application. 2d. Whether the petitioner is entitled to homestead in the premises in question as against the general creditors. 3d. Whether the general creditors can compel the holders of the judgment for the unpaid purchase money first to exhaust the homestead. 4th. Whether there was error in dismissing the petition with costs.

As to the first question raised by the appeal, we agree with the Circuit Judge. The act (*Gen. Stat.*, § 2002) does not provide for or require the filing of any exceptions until after the return of the appraisers appointed to lay off the homestead, and the exceptions having been filed in due time after such return was made, we see no reason why the Circuit Court could not proceed to adjudge the questions raised by the exceptions.

As to the second question, we think it is determined by the recent decision of this court in the case of *Munro* v. *Jeter, ante,* p. 29. While a homestead in a case like this cannot be claimed in land held under a contract to purchase until the purchase money has been fully paid; yet after it has been paid there is no obstacle in the way of such claim, even though the judgment debtor may not have acquired a formal legal title.

As to the third question, we cannot agree with the Circuit Judge in his application to this case of the well settled principle that where "there are two creditors of a common debtor, one of whom has access to two funds or sources of payment and the other has access to only one, the latter has an equity to require the former first to exhaust the fund which is not common to both of them." On the contrary, we do not think this was a case of *two* funds or sources of payment. Laying out of view the personal property, as to which there is no question in this case, there was but one fund or source of payment—the Westfield lot—to no part of which could the general creditors resort for payment of their claims *until after the purchase money was fully paid.*

They had no lien upon it and could not subject it to the payment of their debts by any proceeding until the judgment for the pur-. chase money was fully satisfied, for until then it could not be known with any certainty whether the whole or a part only would be necessary for that purpose. It was an undivided lot, and by the very terms of the judgment for the purchase money only so much thereof was directed to be sold "as may be sufficient to raise the amount reported to be due to the plaintiff for principal, interest, and costs, * * * with due regard to the interests of the parties concerned." These latter words were doubtless inserted for the express purpose of preserving the dwelling house for the family of the debtor.

The general creditors having no lien upon this lot, and no means of subjecting it to the payment of their debts until after the purchase money was paid, and the judgment for the purchase money containing in effect a direction that the portion of the lot outside of what might be claimed as a homestead should be first sold, we do not see how it can be said that this was a case where there were two funds or sources of payment, to both of which the purchase money creditors could resort for payment of their debts, while the general creditors could only resort to one; for, even assuming for the sake of argument that there were two funds, the general creditors, as we have seen, could resort to neither until the purchase money creditors were satisfied and were out of the way—in which event one of the conditions of the rule invoked by the Circuit Judge would be absent, and the rule could not be applied.

This case differs materially from the case of *Savings Bank* v. *Harbin* (18 *S. C.*, 425), relied on by the Circuit Judge. There the debtor had two separate and distinct pieces of property, one called the Bolt tract and the other the home tract, and were so treated by him in his dealings with his creditors. The senior mortgage covered both tracts, the next mortgage covered the Bolt tract only, then followed an intermediate judgment, which of course was a general lien on all his real estate liable to levy and sale, subject though to the liens of the antecedent mortgages, then there was a mortgage on both of said tracts, and finally there was another judgment having a general lien on all the real

estate liable to levy and sale, subject of course to all antecedent liens. So that in that case there were clearly two funds or sources of payment to which all of the creditors could *at the same time* resort for payment of their debts, except that the judgment creditors could not resort to so much of the home tract as might be assigned to the debtor as a homestead, and the second mortgagee could only resort to the Bolt tract after exhausting a note held as collateral security. The legal title to all of the real estate was in the debtor, and it could therefore be reached directly by his creditors. Here, however, there were not two funds or sources of payment, but only one, the Westfield lot, to which the debtor did not have the legal title, and which could not be reached by his general creditors until the claim for the purchase money was extinguished. The general creditors never did or could have access to this property for the payment of their debts until the purchase money is paid, and the moment that is done there are then no longer two creditors, one of whom has access to two funds and the other to one of those funds only, and the rule relied upon cannot apply.

We think, therefore, that there was error in holding that the general creditors have an equity to force the purchase money creditors to resort first to the homestead for payment of the balance due on their judgment; but, on the contrary, are of opinion that such balance should be paid out of the proceeds of the sale of that portion of the lot outside of the portion assigned to the widow as her homestead, and that the balance of such proceeds, if any, be applied in due course of administration.

This view renders it unnecessary to consider the fourth question raised by the appeal, as the judgment below will be reversed, except in so far as it confirms the return as to the personal property.

The judgment of this court is, that the judgment of the Circuit Court be reversed, except in so far as it confirms the return of the commissioners as to the personal property, and that the case be remanded to the Circuit Court for the purpose of carrying out the views herein indicated.